IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ABBASID, INC. d/b/a AZHAR'S ORIENTAL RUGS,

    Plaintiff,

vs.                                            Case No. CV-09-00347 JP/LFG

                                                Consolidated with

                                                Case No. CV-09-00354 JP/LFG

FIRST NATIONAL BANK OF SANTA FE and
LOS ALAMOS NATIONAL BANK,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

        On February 15, 2010, Defendant Los Alamos National Bank ("LANB") filed Los Alamos National Bank's Emergency Motion to Reconsider or For Clarification ("Motion to Reconsider")(Doc. No. 167). On February 16, 2010, Abbasid filed its Brief in Support of Consequential Damages ("Motion for Consequential Damages")(Doc. No. 168). That same day, LANB filed its Brief in Opposition to Consequential Damages (Doc. No. 169). Finally, on February 17, 2010, Plaintiff Abbasid, Inc. ("Abbasid") filed its Response to Defendant LANB's Motion for Reconsideration or For Clarification (Doc. No. 180). Having reviewed the parties' briefs and the applicable law, the Court finds that LANB's Motion to Reconsider should be granted in part and denied in part, and that Abbasid's Motion for Consequential Damages should be denied.

1

**BACKGROUND**

The factual background of this case is set forth extensively in the Court's Memorandum Opinion and Order (Doc. No. 164). Thus, the Court will set forth only those portions of the background relevant to the resolution of the pending motions.

Abbasid asserts its claim[1] against LANB under NMSA 1978 § 55-3-420 for alleged conversion of checks. Specifically, Abbasid contends that LANB erroneously accepted for deposit from Bina Shahani numerous checks that she was not entitled to enforce. Abbasid maintains that as a result of LANB's acceptance of those deposits it not only sustained losses in the amount of the deposited checks but also suffered a "loss of goodwill" that eventually led to the closing of its store. (Doc. No. 168 at 2.)

On November 16, 2009, LANB filed Los Alamos National Bank's Motion for Summary Judgment and Memorandum in Support (Doc. No. 129). In its Motion for Summary Judgment, LANB moved, *inter alia*, to limit the amount of recoverable damages to the face value of the deposited checks — *i.e.* to exclude Abbasid's claim for punitive and consequential damages. Additionally, LANB moved for summary judgment on Abbasid's claim under NMSA 1978 § 55-3-420, arguing that it exercised good faith, used ordinary care and followed reasonable commercial standards in processing the checks at issue.

---

[1] In its Memorandum Opinion and Order (Doc. No. 164), the Court held that Abbasid's common law negligence claim against LANB is not viable because it is preempted by the Uniform Commercial Code ("UCC") and because LANB did not owe Abbasid, a non-customer, a duty of care, and thus found that LANB was entitled to summary judgment on that claim. (*Id.* at 26-27.) Likewise, the Court concluded that Abbasid had failed to plead a viable cause of action with respect to the cash deposits at issue because the UCC does not apply to cash and Abbasid had not plead a common law claim for conversion related to those deposits. (*Id.* at 19-21.) Therefore, the only claim remaining is Abbasid's claim for conversion under the UCC.

On February 10, 2010, the Court issued a Memorandum Opinion and Order (D0c. No. 164) granting in part and denying in part LANB's Motion for Summary Judgment. (*Id.* at 27.) Importantly, the Court found that there is no factual basis in the record for punitive damages; however, the Court reserved ruling on the availability of consequential damages because that issue had not been fully addressed in the parties' briefing on LANB's Motion for Summary Judgment. (*Id.* at 21-22.) Additionally, the Court denied LANB's Motion with respect to its affirmative defenses that it exercised good faith, used ordinary care, and followed reasonable commercial standards in processing the checks at issue. (*Id.* at 24.) In so holding, the Court noted that nothing in the statutory language of NMSA 1978 § 55-3-420 appears to provide for those affirmative defenses and LANB had not cited to any authority suggesting otherwise. (*Id.* at 23-24.)

On February 11, 2010, the Court held a pretrial conference during which the parties were permitted to present argument on the availability of consequential damages and a failure to mitigate damages defense. Because the parties had not previously briefed those issues, the Court instructed counsel to do so and to file their briefs no later than noon on February 17, 2010. The parties have timely filed their briefs and the Court will now address the merits of the parties' arguments.

## DISCUSSION

### I.     LANB's Motion to Reconsider

The title of LANB's Motion is somewhat of a misnomer as LANB seeks three forms of alternative relief: (1) "an order reconsidering any ruling that LANB cannot assert a contributory negligence defense under [NMSA 1978 § 55-]3-406," (Doc. No. 167

3

at 3), (2) an order "clarifying that LANB has such a defense" (*id.*), or (3) an order "allowing LANB to assert the defense of failure to mitigate damages . . .." (*Id.*)  Although LANB's request for relief is confusingly phrased, the Court construes LANB's request as seeking either the ability to assert a contributory negligence defense or a failure to mitigate damages defense, but not both.  With respect to the contributory negligence defense, LANB notes that it raised contributory negligence as an affirmative defense under NMSA 1978 § 55-3-406 to Abbasid's conversion claim under NMSA 1978 § 55-3-420.  LANB asserts that although the Court granted Plaintiff's Motion in Limine (Doc. No. 163) with respect to defenses not afforded by the Uniform Commercial Code ("UCC"), LANB should be allowed to raise contributory negligence as a defense because NMSA 1978 § 55-3-406 provides for such a defense.  In support of that argument, LANB relies heavily on the United States District Court for the Northern District of Illinois' decision in *Nat'l Accident Ins. Underwriters, Inc. v. Citibank, FSB*, 333 F. Supp. 2d 720 (N.D. Ill. 2004), where the Court held that § 3-406 provides a valid defense to a claim for conversion under § 3-420.  *Id.* at 724.   LANB urges the Court to adopt the *Citibank* court's broad definition of "person" to include a depositary bank, like LANB, and thus make available to LANB the contributory negligence defense under NMSA 1978 § 55-3-406.  Alternatively, LANB argues that if the Court denies LANB's request to assert a contributory negligence defense, then LANB should be allowed to raise a failure to mitigate damages defense, though LANB does not offer any authority in support of that argument.

Abbasid responds by arguing that LANB is not entitled to invoke the contributory negligence defense under NMSA 1978 § 55-3-406 because LANB has not demonstrated

that it acted in a commercially reasonable manner, which, according to Abbasid, is a prerequisite to LANB being able to raise Abbasid's allegedly negligent conduct as a defense to liability. Alternatively, Abbasid maintains that LANB should not be allowed to raise a failure to mitigate damages defense because, Abbasid asserts, the UCC's displacement of common law causes of action also acts to displace common law defenses, such as failure to mitigate damages. Likewise, Abbasid contends that LANB's proposed failure to mitigate damages defense is simply another way of asserting contributory negligence, which, Abbasid argues, is not available as a defense to a claim for conversion. Accordingly, Abbasid requests that the Court preclude LANB from asserting either a contributory negligence defense under NMSA 1978 § 55-3-406 or a defense of failure to mitigate damages.

### A. Whether Contributory Negligence Under NMSA 1978 § 55-3-406 or Failure to Mitigate Damages are Viable Defenses to a Claim Under NMSA 1978 § 55-3-420

Abbasid's sole remaining claim arises under NMSA 1978 § 55-3-420, which provides as follows:

> (a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.
>
> (b) In an action under Subsection (a), the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument.
>
> (c) A representative, other than a depositary bank, who has in good faith dealt with an instrument or its proceeds on behalf of one who was not the person entitled to enforce the instrument is not liable in conversion to that person beyond the amount of any proceeds that it has not paid out.

As the Court has previously observed, NMSA 1978 § 55-3-420 does not on its face provide any affirmative defenses to liability for a depositary bank, like LANB. Nevertheless, LANB maintains that it is entitled under NMSA 1978 § 55-3-406 to assert contributory negligence as a defense to Abbasid's claim for conversion under NMSA 1978 § 55-3-420, and, in so doing, raise the purported good faith and commercial reasonableness of its actions in handling the checks at issue.

> NMSA 1978 § 55-3-406 provides that:
>
> (a) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.
>
> (b) Under Subsection (a), if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.
>
> (c) Under Subsection (a), the burden of proving failure to exercise ordinary care is on the person asserting the preclusion. Under Subsection (b), the burden of proving failure to exercise ordinary care is on the person precluded.

While NMSA 1978 § 55-3-406 does not specifically define "person," the general definitions section of New Mexico's UCC does and explains that a person under the UCC "means an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, government, governmental subdivision, agency or instrumentality; public corporation; or any other legal or commercial entity." NMSA 1978 § 55-1-201 (27). Thus, under this definition, a bank would qualify as a person potentially entitled to invoke the defenses provided by NMSA 1978 § 55-3-406.

*See also* NMSA 1978 § 55-1-201 (4)(defining a bank as a "*person* engaged in the business of banking and includes a savings bank, savings and loan association, credit union and trust company[.]")(emphasis added).

In *Nat'l Accident Ins. Underwriters, Inc. v. Citibank, FSB*, 333 F. Supp. 2d 720 (N.D. Ill. 2004), the case on which LANB so heavily relies, the court treated the definition of "person" as essentially dispositive of the issue of whether a bank could assert contributory negligence under § 3-406 as a defense to liability under § 3-420. *See id.* at 724. However, the Court here does not agree with that approach. Importantly, the overly simplistic approach that the court followed in *Citibank* overlooks the glaring conflict in the statutory language of § 3-406 and § 3-420 and neglects to examine the situations to which the respective statutory provisions apply.

As the Court has previously noted, Comment 3 to § 3-420 makes clear that, "[i]n revised Article 3, the defense provided by Section 3-420 (c) is limited to collecting banks *other than the depositary bank*." (emphasis added). As such, a depositary bank's alleged good faith in handling the checks at issue is irrelevant to the determination of liability under § 3-420. Conversely, § 3-406 (a) makes good faith an element of a viable defense to liability, in stark contrast to the express language of § 3-420. While at first blush this conflicting language would appear to necessitate the application of complex rules of statutory construction, a careful reading of the statutes and their respective commentary reveals that such an approach is not necessary.

Comment 3 to NMSA 1978 § 55-3-406 lists three examples of cases to which that provision of the UCC would apply. While the Court does not believe that this list is intended to be exhaustive, it is nevertheless instructive. Importantly, each example

7

describes a variation of the scenario where the drawer of the check seeks recovery from a person who in some manner altered the check or paid on an altered check.  *See* NMSA 1978 § 55-3-406 cmt. 3.  Under each scenario described, a determination of whether the drawer was negligent in its preparation of the check or in creating conditions that substantially contributed to the alteration of the check is a central issue in determining liability.  Stated otherwise, those scenarios focus on the conduct of the drawer and do not involve consideration of the conduct of the payee on the check.  That focus does not fit the circumstances of this case.

Importantly, the individual drawers of the checks at issue are not asserting claims here that could potentially fall within the scope of the scenarios described in the commentary to NMSA 1978 § 55-3-406.  Rather, this case concerns only Abbasid's claim that LANB erroneously accepted checks for deposit from Shahani. Here, Abbasid, the payee on the checks at issue, seeks recovery based on Shahani's alleged misappropriation of checks to which Abbasid claims it was lawfully entitled.  Hence, Abbasid is not claiming that Shahani altered Abbasid's obligations or liabilities on the checks at issue, but instead claims that Shahani deposited those checks at LANB without authority to do so.  This situation thus falls squarely within the statutory language of NMSA 1978 § 55-3-420, where the focus of the liability inquiry is on whether the bank accepted a particular check for deposit and whether the person depositing the check had authority to do so.  The alleged contributory negligence of the intended payee on the check holds no place in that inquiry.  Any contrary reading of the statute would require the Court to read into the statute language that is not there, which the Court will not do.  Therefore, the Court finds that the contributory negligence defense provided under NMSA 1978 § 55-3-406 is not viable with respect to claims under NMSA 1978 § 55-3-420.

However, the Court finds that failure to mitigate damages is an available defense to claims under NMSA 1978 § 55-3-420. Although the UCC displaces common law claims for conversion with respect to negotiable instruments, that displacement does not necessarily vitiate all common law principles relating to conversion. Instead, the UCC's displacement merely establishes the principle that where the UCC governs a particular transaction, it preempts conflicting common law principles. *See* NMSA 1978 § 55-1-103 (a). However, as the introductory language of the UCC makes clear, the common law supplements the UCC. This means that where the UCC and common law principles do not conflict, they can be read to apply equally to transactions governed by the UCC. *See* NMSA 1978 § 55-1-103 (b). It is well-settled that "[u]nder the doctrine of 'avoidable consequences' the injured person has the duty to use reasonable diligence to mitigate damages incurred either from tort or breach of contract." *Acme Cigarette Servs., Inc. v. Gallegos*, 91 N.M. 577, 583, 577 P.2d 885, 891 (Ct. App. 1978) (Hernandez, J, specially concurring); *see also Ledbetter v. Webb*, 103 N.M. 597, 605, 711 P.2d 874, 883 (1985)(Stowers, J. concurring)("the principle of avoidable consequences or mitigation of damages is applicable to torts both negligent and intentional."). Indeed, a plaintiff's failure to mitigate his damages has been recognized in numerous jurisdictions as a viable defense to claims for conversion under the UCC's § 3-420. *See Sutcliffe v. FleetBoston Financial Corp.*, 108 Conn. App. 799, 807, 950 A.2d 544, 550 (2008)(collecting cases)(noting that "[t]he mitigation of damages defense provides that the liability of a drawee or depository bank in a conversion action brought by an intended payee is reduced to the extent that the intended payee receives the proceeds of the check applied to the specific obligation the check was intended to discharge. . . .

9

[T]he mitigation of damages defense was intended to prevent unjust enrichment of the intended payee and to comport with the general intent of the Uniform Commercial Code remedies that an aggrieved party should be put in as a good a position, as if the other party had performed fully, but not in a better position.")(internal citations and quotation marks omitted).

The recognition of the defense is logical when considering its starting premise. It is axiomatic that to assert a failure to mitigate damages defense, a plaintiff already must have established liability. As such, a plaintiff's alleged failure to mitigate damages does not intrude upon the determination of liability. The defense only enters the calculus when determining the extent of damages the defendant should be made to pay the plaintiff. Hence, whether the cause of action provides for strict liability or some lesser standard is not relevant to the availability of the defense because it bears no relationship to the determination of liability, and regardless of the standard for liability, a plaintiff is not entitled to be unjustly enriched.

As the Court has previously recognized, NMSA 1978 § 55-3-420 essentially establishes a strict liability claim if the plaintiff meets its burden of proof. Hence, while permitting LANB to raise a contributory negligence defense would undermine the fundamental purpose of such a claim, allowing LANB to assert a failure to mitigate damages defense would not. Under a failure to mitigate damages defense, Abbasid's alleged conduct would not affect the jury's determination of liability and would only serve to reduce potentially the amount damages LANB would be required to pay. Because the Court concludes that permitting LANB to assert a failure to mitigate damages defense would comport with the spirit of the liability scheme established in NMSA 1978 § 55-3-420, the Court concludes that LANB's motion in this regard should be granted.

## II.     Abbasid's Motion for Consequential Damages

Abbasid moves the Court to allow Abbasid to seek consequential damages on its claim under NMSA 1978 § 55-3-420.  Abbasid argues that "[t]here have been many common law conversion cases in which the plaintiff was found to be entitled to damages beyond the value of the converted property."  (Doc. No. 168 at 2.)  Here, Abbasid asserts that its damages beyond the value of the checks is the loss of goodwill that led to the eventual closing of Azhar's, though Abbasid does not offer any evidence in support of that claim or purport to know how such damages would be calculated.

LANB responds that the plain language of the UCC does not permit an award of consequential damages, unless the particular provision of the UCC at issue provides for the recovery of such damages.  In support of its argument, LANB cites to NMSA 1978 § 55-1-305 (a), which provides that:

> The remedies provided by the Uniform Commercial Code . . . must be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special damages nor penal damages may be had except as specifically provided in the Uniform Commercial Code or by other rule of law.

The Court finds this language highly instructive in assessing the availability of consequential damages in this case.  NMSA 1978 § 55-3-420 (b) specifically limits the amount of recoverable damages to the amount payable on the instrument and does not otherwise provide for additional damages.  Thus, nothing in the express language of the statute or in the commentary suggests that consequential damages are available in a claim for conversion under NMSA 1978 § 55-3-420 (a).  Therefore, the Court concludes that Abbasid's Motion for Consequential Damages should be denied.

## CONCLUSION

Given the circumstances presented in this case, a contributory negligence defense under NMSA 1978 § 55-3-406 is not appropriate.  However, failure to mitigate damages is an available defense.  Furthermore, because NMSA 1978 § 55-3-420 (b) specifically describes the potentially recoverable damages in a claim under NMSA 1978 § 55-3-420 (a), and does not include consequential damages in that description, consequential damages will not be recoverable here.

**IT IS THEREFORE ORDERED THAT:**

(1) Defendant Los Alamos National Bank's Emergency Motion to Reconsider or For Clarification (Doc. No. 167) is GRANTED IN PART with respect to its request to assert a failure to mitigate damages defense, and DENIED with respect to its request to assert a contributory negligence defense under NMSA 1978 § 55-3-406; and

(2)  Abbasid's Brief in Support of Consequential Damages (Doc. No. 168) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE